JOHNSON ROOFING, INC., Appellant,

v.

STAAS PLUMBING COMPANY,
INC., et al., Appellees.

No. 10–90–095–CV.

Court of Appeals of Texas,
Waco.

Jan. 29, 1992.

Fred M. Johnson, Jr., Pakis, Cherry, Beard & Giotes, Inc., Waco, for appellant.

Beverly A. Crowden and James O. Terrell, Terrell & Crowden, P.C., Karen C. Matkin, Mills, Millar & Matkin, Waco, for appellees.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

THOMAS, Chief Justice.

The roof of a building owned by Staas Plumbing Company, Inc. and occupied by Waco Packing Co., Inc. partially collapsed after a heavy rain. Staas sued Johnson Roofing, Inc., which had re-roofed the building five months before the collapse, for negligence and a breach of warranty under the Deceptive Trade Practices Act (DTPA). Waco Packing intervened, alleging negligence against Johnson Roofing and Staas and a DTPA breach of warranty by the roofing company. A jury found that Johnson Roofing and Staas were both negligent but failed to find a breach of warranty. Notwithstanding the verdict, the court disregarded the answers to the warranty and damage questions and entered a judgment in favor of Staas and Waco Packing for attorney's fees and an amount of actual damages greater than those found by the jury.

Johnson Roofing contends in point one that the court erred when it entered the judgment notwithstanding the verdict because the evidence did not establish a breach of warranty or the damages awarded by the court as a matter of law. Thus, Johnson Roofing argues that the court should not have awarded attorney's fees, which could only be recovered under the DTPA, and should have entered a judgment in favor of Staas and Waco Packing based on the negligence and damage findings in the verdict.

## THE NEW ROOF

The building was twenty-four-years old and had a concrete roof deck with a feltpaper, tar, and pea-gravel roof that had been leaking for some time. Johnson Roofing replaced the roof in December 1988 with a ballasted roof. This involved (1) removing the pea gravel, (2) installing insulation board over the felt paper and tar that remained, (3) laying a rubber mat over the insulation board, (4) installing a "gravel guard" around the roof's perimeter to keep the ballast from washing off the roof, and (5) covering the rubber mat with rock ballast. Johnson Roofing's employees inspected the new roof three times for suspected leaks. During the last inspection on the afternoon of May 4, 1989, water was siphoned off the roof with a water hose, but no leaks were found. Sometime that night, in conjunction with a severe rain storm, two concrete ceiling joists broke and the roof partially collapsed.

Essentially, Staas' and Waco Packing's theory of liability is that Johnson Roofing selected a roof that, even if properly installed, was unsuitable for the building because it was too heavy for the roof-structure's design. They also charged that the roof was negligently installed.

## WACO PACKING'S BUSINESS PROBLEMS

Waco Packing had been operating its wholesale and retail meat business in the building for many years. The roof collapsed above a walk-in cooler that was used to store, process, and package meat. Debris contaminated some of the meat and damaged equipment left inside the cooler. The company ceased business operations for two days while debris was removed and then continued operating in an unrefrigerated portion of the building. It kept some of its meat stored in space leased from a competitor located approximately two miles away. This required numerous trips each day to retrieve meat from the rented space. Two reach-in coolers were finally purchased to provide some on-site storage of cheese and processed products, such as ground meat. Without the walk-in cooler, Waco Packing had to pay a higher price for meat because it could no longer buy and store in bulk, and it had to buy some products, such as ground meat, already processed. Due to competitive market prices, these higher costs were absorbed by the company. The walk-in cooler was not repaired and back in operation until January 8, 1990.

Witnesses described the problems associated with processing and packaging meat

in an unrefrigerated area. For example, health inspectors required the meat-processing equipment to be cleaned twice as often as before; meat was more difficult to process because it was not kept constantly chilled; meat lost its red color faster than when kept under constant refrigeration during processing; and personnel had to work overtime.

## BREACH OF WARRANTY

Johnson Roofing gave Staas a written two-year warranty on the roof. This obligated the company to repair "any defects resulting solely from faults or defects in workmanship or materials supplied by or through [Johnson Roofing] as may be necessary to maintain the subject roof ... in a watertight condition." However, the warranty did not cover damage caused by "lightning, windstorm, hailstorm, ... or other unusual phenomena of the elements; ... failure or cracking of the roof deck; ... [or] structural failures." Staas and Waco Packing both alleged that Johnson Roofing violated the DTPA by breaching this express warranty as well as implied warranties that the ballasted roof would be suitable for the building and that the new roof would be installed in a good and workmanlike manner. However, the jury answered "No" to the following question:

### QUESTION NUMBER 1

Was the failure, if any, of Johnson Roofing, Inc. to comply with a warranty a producing cause of damage to either Staas Plumbing Company, Inc. or to Waco Packing Company, Inc.?

"Failure to comply with a warranty" means any of the following:

1. failing to repair any defects in the original replacement roof which resulted solely from faults or defects in workmanship, if any, at the sole cost and expense of Johnson Roofing, Inc.;

2. failing to perform the installation of the original replacement roof in a "good and workmanlike" manner. The term "good and workmanlike" means that quality of work performed by one who has the knowledge, training, or experience necessary for the success-ful practice [of] a trade or occupation and performed in a manner generally considered proficient by those capable of judging such work;

3. furnishing or selecting an original replacement roof that was not suitable for a particular purpose if the Defendant, Johnson Roofing, Inc., had reason to know of the purpose and further knew that Staas Plumbing Company, Inc. was relying on Johnson Roofing, Inc.'s skill or judgment to furnish or select suitable goods.

STANDARD AND SCOPE OF REVIEW

■ The "No" answer to the broad-form submission of Question 1 represented a failure of proof by Staas and Waco Packing, not an affirmative finding that no breach occurred. *See Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989); TEX.R.CIV.P. 277. To be entitled to a judgment notwithstanding the answer to the warranty question, Staas and Waco Packing had to demonstrate that the evidence established a breach of warranty as a matter of law. *See Sterner*, 767 S.W.2d at 690.

■ The method and scope of our review will involve the following. First, we will examine the record for probative evidence supporting the failure to find a breach of warranty, ignoring all contrary evidence and inferences. *See id.* If some evidence supports the failure to find, our inquiry will end. *See id.* at 691. However, if the failure to find a breach of warranty is not supported by any evidence, our second step will be to examine the entire record to determine whether a breach of warranty was established as a matter of law. *See id.* at 690. The evidence and inferences will always be considered most favorably to the verdict. *See Dowling v. NADW Marketing, Inc.*, 631 S.W.2d 726, 728 (Tex. 1982).

EVIDENCE SUPPORTING THE FAILURE TO FIND A BREACH OF WARRANTY

■ Essentially, Question 1 asked whether Johnson Roofing breached any of the following: (1) the express written war-

ranty; (2) an implied warranty that the roof was installed in a good and workmanlike manner; (3) an implied warranty that the ballasted roof was suitable for the building. As noted above, the "No" answer only represents a failure of Staas and Waco Packing to discharge their burden of proving a breach of the warranties by a preponderance of the evidence. *See Sterner,* 767 S.W.2d at 690.

WRITTEN WARRANTY

The jury refused to find that Johnson Roofing failed to repair "any defects in the original replacement roof which resulted solely from faults or defects in workmanship." Billy Johnson, the chief executive officer of Johnson Roofing, and Burl Hill, the company's commercial roofing superintendent, both denied that the collapse was caused by any defects in workmanship in installing the new roof. Johnson not only denied that his company was responsible for the collapse but attributed it to a combination of factors: heavy rain on the night of the collapse, concrete ceiling joists that were not designed to be as strong as they should have been, and ceiling joists that were weakened over the years by leaks in the old roof and by the ceiling inside the building being "screwed into" the joists. Johnson and Hill both denied that the ballasted roof overloaded the roof-structure's design limitations.

Moreover, the written warranty excluded from its coverage any damage caused by the "failure or cracking of the roof deck ... [or] structural failures." The roof deck cracked and partially collapsed when the two ceiling joists failed structurally. Johnson Roofing's witnesses attributed the failure to causes other than defects in workmanship in the new roof's installation or the weight of the new roof exceeding the roof-structure's design limitations. Thus, some evidence exists that the damage was excluded from the written warranty's coverage. Disregarding all evidence to the contrary and viewing the evidence and indulging all inferences in favor of the verdict, the failure to find a breach of the written warranty is supported by some evidence.

GOOD AND WORKMANLIKE MANNER

The jury failed to find that Johnson Roofing breached an implied warranty to install the new roof in a good and workmanlike manner. Although their testimony is disputed by other evidence, Johnson and Hill both insisted that the new roof was installed without any defects in workmanship and that the collapse resulted solely from causes they could not have been reasonably aware of and over which they had no control. Ignoring all evidence that would have supported an affirmative finding, we determine that the failure to find a breach of an implied warranty to install the roof in a good and workmanlike manner is supported by some evidence.

ROOF SUITABLE FOR ITS INTENDED PURPOSE

The jury also failed to find that Johnson Roofing breached an implied warranty that the ballasted roof would be suitable for its intended purpose. The question is whether Johnson Roofing selected and installed a roof that exceeded the weight limitations originally designed and built into the roof structure. Although the record contains conflicting evidence on this pivotal issue, Johnson and Hill both denied that the ballasted roof overloaded the roof-structure's weight limitations. Consequently, some evidence supports the failure to find that Johnson Roofing breached an implied warranty of suitability.

Finding some evidence to support the failure to find a breach of the warranties, we end our "as a matter of law" inquiry at this point. *See id.* at 691. This is because, with some probative evidence supporting the failure to find, the evidence could not establish a breach of the warranties as a matter of law. Johnson Roofing's first point is sustained as it relates to liability.

WACO PACKING'S CROSS-POINT: STANDARD AND SCOPE OF REVIEW

█ Waco Packing asserts by a cross-point that the failure to find a breach of warranty is against the great weight and preponderance of the evidence. *See Gulf, Colorado & Santa Fe Railway Company v. Deen,* 158 Tex. 466, 312 S.W.2d 933, 937–38 (1958), *rev'd on other grounds,* 358 U.S.

57, 79 S.Ct. 1, 2, 3 L.Ed.2d 28 (1958). The standard of review is whether the great weight of the evidence so preponderates in favor of an affirmative finding that the failure to find a breach of warranty is manifestly unjust. *See Traylor v. Goulding*, 497 S.W.2d 944, 945 (Tex.1973). That the evidence merely preponderates in favor of an affirmative finding will not suffice. *See Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex.1988). Although the scope of our review expands to the entire record, the evidence will be viewed in the light most favorable to the verdict. *See Dowling*, 631 S.W.2d at 728.

CONFLICTING EVIDENCE ON CAUSE OF COLLAPSE

■ Shortly after the roof collapsed, Johnson Roofing employed John Rogers, the structural engineer who had originally designed the building's concrete ceiling joists, to determine whether the roofing company was responsible for the collapse. Rogers saw the collapsed roof, reviewed his original shop drawings of the joists, made a few calculations, and advised Johnson Roofing that "the installation of the ballasted roof was contributory" to the roof's collapse. He conducted no tests to substantiate his opinion.

Rogers testified that the roof structure with the old roof had a "dead load" of 42 pounds per square foot (ppsf) and a "live load" safety margin of 20 ppsf. He explained to the jury that "dead load" refers to the internal fixed weight that the roof structure must constantly support. This included the weight of the concrete ceiling joists, roof deck and roofing materials (felt paper, tar, insulation, rubber mat, rock ballast, etc.) applied over the roof deck to weather-proof the building, and the ceiling and insulation attached to the roof structure inside the building. "Live load," he said, means the safety margin designed into the roof structure to support the weight of water, ice, or snow that might accumulate on the roof at any time. Because of their interrelationship, an increase in the dead load results in a corresponding decrease in the safety margin of the live load. Rogers estimated that the new roof increased the dead load by 7 to 8 ppsf,

which correspondingly reduced the live load's safety margin from 20 ppsf to 12 or 13 ppsf. He admitted, however, that the new roof had not, by itself, overloaded the total weight limitation designed into the roof structure. Instead, he testified that the net increase in the dead load had reduced the safety margin of the live load to the extent that the weight of the water accumulating on the roof during the heavy rain on the night of the collapse, when combined with the increased dead load, exceeded the roof-structure's design limitations.

Prior to testifying, Rogers reviewed a report prepared by Morris Engineering Company. The report, which was admitted as an exhibit, contained these opinions: (1) the roof deck was *initially deflected*—i.e., the concrete ceiling joists and roof deck were already sagging under the weight of the old roof before the new roof was installed; (2) water had been ponding on the old roof; (3) the heavier ballasted roof increased the sagging of the roof deck, resulting in an increased accumulation of water; and (4) a cycle developed—the ever-increasing weight of water caused further sagging in the roof, which allowed more water to accumulate and increased the deflection to the point that the ceiling joists finally failed and the roof collapsed. Rogers agreed with these conclusions in the report:

The installation of the ballasted roof increased the dead load of the roof which increased the deflection of the roof members. The increased deflection creates a deeper depression for water to accumulate on the roof. The installation of a gravel guard around the perimeter of the roof compounded the water ponding problem by increasing the [height] of the perimeter.

Staas and Waco Packing contend that Johnson Roofing did not contradict Rogers' expert-opinion testimony or the expert opinions in the Morris Engineering report by other experts. Yet, Johnson and Hill both denied that the new roof overloaded the roof structure to the extent that its ability to carry the live load was reduced to an

unsafe margin. Moreover, Rogers' testimony contained some inconsistencies; he admitted to variances between his deposition testimony and trial testimony relating to the estimated net increase in the dead load attributable to the new roof. This estimate was the cornerstone of his opinion. He also used certain "assumptions" in calculating the dead load on the roof structure before Johnson Roofing replaced the old roof. The assumptions were that the old roofing material weighed 6 ppsf and that the insulation and ceiling hung from the roof structure inside the building weighed 5 ppsf. He used the assumptions to estimate the net increase in the dead load resulting from the new roof.

The Morris Engineering report, in fact, provides some support for Johnson's opinion that the ceiling joists collapsed because they had been weakened before the new roof was installed. Morris Engineering found evidence of deflection and accumulation of water on the old roof—i.e., the ceiling joists had begun to sag even before the new roof was installed. Rogers said that he was not aware of leaks in the old roof or the sagging ceiling joists and did not consider that information in forming his opinion about the cause of the collapse.

■ Thus, Rogers' opinion on causation and the opinions in the Morris Engineering report do not stand unimpeached or uncontradicted. Under the circumstances, these expert opinions were not binding on the jury. *See McGalliard v. Kuhlmann,* 722 S.W.2d 694, 697 (Tex.1986) (holding that a jury can accept lay testimony over expert testimony when presented with conflicting evidence).

The question is whether the great weight of the evidence so preponderates in favor of an affirmative finding that the failure to find a breach of warranty is manifestly unjust. *See Traylor,* 497 S.W.2d at 945. Certainly, Rogers' expert-opinion testimony and the opinions in the report of Morris Engineering would support an affirmative finding of a breach of warranty by a preponderance of the evidence. That will not suffice, however, because the *great weight* of the evidence must so preponderate in favor of the affirmative that the failure to find the affirmative is manifestly unjust. *See Herbert,* 754 S.W.2d at 144. In weighing the evidence, we must also remember that the jury was not persuaded by the expert-opinion testimony. *See id.* Considering the record as a whole, we cannot say that the failure to find a breach of warranty is so against the great weight and preponderance of the evidence as to be manifestly unjust. The cross-point is overruled as it relates to liability.

REVERSAL OF JUDGMENT NOTWITHSTANDING THE VERDICT ON LIABILITY

Accordingly, we reverse the judgment entered notwithstanding the verdict on liability because the failure to find a breach of warranty is supported by some evidence. *See Sterner,* 767 S.W.2d at 690. Having overruled Waco Packing's cross-point, we will render a judgment against Johnson Roofing in favor of Staas and Waco Packing based on the liability findings in the verdict. *See Deen,* 312 S.W.2d at 937–38. Before rendering judgment, however, we must determine whether the court properly disregarded the jury's damage findings.

## DAMAGES

The jury found that Johnson Roofing and Staas were both negligent, attributed 80% of the negligence to the roofing company, 20% to Staas, and awarded these damages:

A. Reasonable and necessary cost to repair and re-roof the building after the collapse. $36,630.18

B. Reasonable and necessary cost to repair or replace equipment owned by Waco Packing. $ 8,201.18

C. Reasonable and necessary cost to repair or replace the walk-in cooler owned by Waco Packing. $11,414.00

D. Market value of Waco Packing's inventory condemned by health officials after the collapse. $ 1,336.32

E. Reasonable and necessary expense Waco Packing incurred in renting a meat-patty machine. $ 3,000.00

F. Overtime wages due Waco Packing's officers and employees.    –0–
G. Reasonable and necessary expenses Waco Packing incurred in increased operating costs.    $ 2,800.00
H. Reasonable and necessary expenses Waco Packing incurred for increased inventory cost of meat products.    –0–

---

However, the court disregarded the answers in B, C, E, F, G and H and entered a judgment for a total amount of damages greater than that found by the jury.

STANDARD AND SCOPE OF REVIEW

▩ A court can disregard a jury finding and enter a judgment notwithstanding the verdict only if the finding is not supported by any probative evidence. *Best v. Ryan Auto Group, Inc.*, 786 S.W.2d 670, 671 (Tex.1990). This rule applies to damage findings. *Turner, Collie & Braden v. Brookhollow, Inc.*, 642 S.W.2d 160, 165 (Tex.1982). Here, because Staas and Waco Packing had the burden of proving damages, the amount of damages awarded by the court can be upheld only if the evidence established the court's award as a matter of law. *See Sterner*, 767 S.W.2d at 690; *Brookhollow, Inc.*, 642 S.W.2d at 165.

▩ The steps in our review are similar to those used to review the failure to find a fact vital to the party with the burden of proof. *See Sterner*, 767 S.W.2d at 690. Thus, we will first determine whether the jury's findings are supported by some evidence, while ignoring all contrary evidence and inferences. *See Best*, 786 S.W.2d at 671. All evidence will be viewed in the light most favorable to the verdict. *See Dowling*, 631 S.W.2d at 728. If the damage findings are supported by some evidence, our inquiry will end on the legal-sufficiency point, and we will consider Waco Packing's cross-point. *See Deen*, 312 S.W.2d at 937–38.

EVIDENCE SUPPORTING JURY'S DAMAGE FINDINGS

▩ All testimony and evidence relating to damages came from interested witnesses, and much of it, especially on the cost of repairs or replacement, consisted of estimates of costs yet to be incurred or opinions on the reasonableness and necessity of costs already paid. Many items of damage were estimated to fall within a range of figures; others were precisely stated along with the opinion that they were reasonable and necessary.

A detailed analysis of the evidence relating to the various items of damage is unnecessary because, clearly, the jury's findings are supported by some evidence. Under the circumstances, the court could not disregard the findings and enter a judgment notwithstanding the verdict for a different or greater amount of damages. *See Brookhollow, Inc.*, 642 S.W.2d at 165.

Johnson Roofing's first point has already been sustained to the extent it asserts that the evidence did not establish a breach of warranty as a matter of law. We now sustain point one as it relates to damages.

WACO PACKING'S CROSS-POINT: SCOPE AND STANDARD OF REVIEW

Having found that Staas and Waco Packing were not entitled to a judgment notwithstanding the verdict on damages, we will now consider Waco Packing's cross-point that the damage findings are against the great weight and preponderance of the evidence. *See Deen*, 312 S.W.2d at 937–38. All of the evidence will be considered, but it will be viewed in the light most favorable to the verdict. *See Dowling*, 631 S.W.2d at 728.

▩ Opinion testimony, especially from interested witnesses, is not conclusive and, thus, can be accepted or rejected in whole or in part by a jury. *McGalliard*, 722 S.W.2d at 697. This is especially true in the area of damages, where the jury is entitled to considerable discretion. *Id.* Even a cursory review of the evidence discloses that the evidence left the precise determination of the amount of damages to the jury's discretion. We cannot say that its findings are so against the great weight and preponderance of the evidence as to be

manifestly unjust. Accordingly, the cross-point is overruled as it relates to damages.

REVERSAL OF JUDGMENT NOTWITHSTANDING THE VERDICT ON DAMAGES

We reverse the judgment notwithstanding the verdict on damages because the court's damage award was not established as a matter of law. *See Sterner*, 767 S.W.2d at 690; *Brookhollow, Inc.*, 642 S.W.2d at 165. Having overruled Waco Packing's cross-point, we will render a judgment against Johnson Roofing in favor of Staas and Waco Packing based on the damage findings in the verdict. Johnson Roofing's remaining point, that the court should have abated the proceeding until Waco Packing complied with the DTPA's notice requirements, is not reached.

## DISPOSITION

We reverse in its entirety the judgment entered notwithstanding the verdict and remand the cause with instructions for the trial court to render a judgment against Johnson Roofing in favor of Staas and Waco Packing based on the verdict and in conformity with this opinion. *See* TEX. R.APP.P. 80(c).