**Ex parte David Lloyd THOMAS,
Appellant.**

No. 10–96–247–CV.

Court of Appeals of Texas,
Waco.

Nov. 19, 1997.

F.W. (Bill) Price, Copperas Cove, for appellant.

Gina M. DeBottis, Special Prosecution Unit, Huntsville, John C. West, Jr., Chief Legal Services, J. Frank Davis, Senior Hearing Examiner and Charles R. Maddox, Assistant General Counsel, Department of Public Safety, Austin, for appellee.

Before DAVIS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

VANCE, Justice.

David Lloyd Thomas appeals from an order denying the expunction of the records of his arrest and indictment for the sexual assault of his fifteen-year-old daughter V.T. *See* TEX. PEN.CODE ANN. § 22.011(a)(2)(A) (Vernon 1994).[1] Thomas alleges that the State dismissed his indictment because it was based on evidence procured by mistake, false information, or some similar reason indicating an absence of probable cause. *See* TEX. CODE CRIM. PROC. ANN. art. 55.01(a)(2)(A) (Vernon Supp.1997).

Thomas brings two points: (1) the court's conclusion that he failed to prove that the State dismissed his indictment because of an absence of probable cause is based on findings that are contrary to the great weight and preponderance of the evidence; and (2) the court erred by failing to apply a liberal construction to the provisions of article 55.01.

We will sustain his first point, reverse the order, and remand the cause for a new trial.

## BACKGROUND

After the court originally denied his expunction request in July 1994, Thomas appealed on grounds that the court erred in excluding testimony which he offered to prove that V.T. had falsely accused him of the alleged sexual assault. We reversed the 1994 order and remanded the cause for another hearing. *See Thomas v. State,* 916 S.W.2d 540, 547 (Tex.App.—Waco 1995, no writ).

On remand, the court heard "additional" testimony. The statement of facts from the original hearing was before the court. After Thomas rested his case, the judge said "I assume since I'm taking additional testimony, I'm bound by whatever testimony was previously given in the case."

Thomas testified that when V.T. desired to begin dating at age fourteen, his wife and he began to experience "severe problems" because V.T. wanted to date men five or more years older than she and because she wanted to stay out after midnight. In the Spring of 1991, Thomas forbade V.T. from dating a particular soldier from Fort Hood. Later he found them together on the living room floor. Thomas again told V.T. that she could not see this man. Later, she reported that Thomas had "sexually molested" her over a five year period. The Department of Human Services ("DHS") investigated the allegations and concluded that they were unfounded. DHS closed the case in April or May of 1991.

One year later, Thomas again caught V.T. and the forbidden soldier in the house. Thomas grounded her. One and one-half weeks later, he again found them together. This time, he took away her telephone privileges. V.T. ran away from home about a month later. She again made the allegations previously investigated in 1991 by DHS, which reopened the case in July 1992. By then, V.T. was seventeen years old.

---

1. The current version of the statute is cited for the sake of brevity because it does not vary in pertinent part from the version in effect at the time of the offense alleged. *Compare* Act of May 29, 1987, 70th Leg., R.S., ch. 1029, § 1, 1987 Tex. Gen. Laws 3474, 3474, *with* TEX. PEN.CODE ANN. § 22.011(a)(2)(A) (Vernon 1994).

Thomas testified on cross-examination by the district attorney that after V.T. ran away, he changed the locks on the house and would not allow her to return unless she agreed to live under his guidelines.

During its cross-examination, the Department of Public Safety ("DPS") attempted to establish that Thomas had opportunities to commit the offense, asking whether V.T. had missed the school bus on some occasions and had to be taken to school by Thomas. Thomas said that V.T. had admitted to him and to her mother in 1991 that the offense had not occurred. One of Thomas' sons, S.T., testified that V.T. engaged in wanton behavior "like kissing and stuff like that, not like intercourse" with her dates. He explained that she always seemed to prefer to do the opposite of what their parents asked. S.T. believes that V.T. lied about the allegations against their father. He testified that on another occasion she (and apparently he, himself) lied to their parents about going to see a movie when they in fact went to a friend's house where he played video games while she was outside "making out" with her boyfriend. S.T. recalled no situations that made him suspect that Thomas had molested V.T. S.T. testified on cross-examination that V.T. probably missed the bus once or twice and Thomas had taken her to school.

Another son, P.T., testified that he never witnessed V.T. engaging in "any sexual type behavior." He recalled that on one occasion she went on a date with someone whom she had been forbidden to see while their parents were at work. P.T. never saw anything to make him suspect that Thomas had molested V.T.

Before V.T. ran away from home, she shared a room with her sister M.T. M.T. testified that V.T. engaged in "sexual behavior like with her boyfriends and stuff." She

recalled a specific instance when V.T. and she were home alone and someone came over whom V.T. had been forbidden to see. After M.T. went outside, she looked inside and saw that "they were all over each other." She did not recall any instances which led her to believe that Thomas had molested V.T. V.T. never confided in her sister that he had molested her.

DPS presented the testimony of Samantha Woods, one of the DHS caseworkers who investigated V.T.'s allegations in 1992.[2] Woods testified that she believed V.T. told the truth when she discussed the allegations against Thomas. Woods agreed on cross-examination that V.T.'s siblings told her at the time of the investigation that V.T. was lying about the allegations.

DPS also introduced the testimony of Alice McKenna, with whom V.T. has lived since she ran away from home. McKenna has known V.T. since 1989 through church. McKenna testified that she overheard a telephone conversation between V.T. and her mother in which V.T.'s mother asked V.T. if Thomas had touched her again. She also observed that V.T. has experienced nightmares and has sometimes awakened at night "absolutely hysterical because of some dreams and flashbacks that she's had."

Sandy Gately, the Coryell County District Attorney, testified that the grand jury presented Thomas' indictment on the basis of her synopsis of the case. Gately based her presentation to the grand jury on the DHS report which she felt was corroborated by the telephone conversation overheard by McKenna. Gately testified that she dismissed the indictment because she later discovered that V.T.'s mother would not testify as an outcry witness and no other outcry witness could be located.[3] We presume from Gately's testimony that no physical evidence

---

**2.** Effective September 1, 1992, the 72nd Legislature transferred DHS' responsibilities for such investigations to the newly-created Department of Protective and Regulatory Services. *See* Act of August 9, 1991, 72nd Leg., 1st C.S., ch. 15, § 1.06, 1991 Tex. Gen. Laws 281, 295–96.

**3.** At the time of the offense alleged, article 38.07 of the Code of Criminal Procedure provided that a *conviction for sexual assault could be had on* the uncorroborated testimony of the victim if the

victim had informed another of the assault within six months of its occurrence. *See* Act of May 29, 1983, 68th Leg., R.S., ch. 977, § 7, 1983 Tex. Gen. Laws 5311, 5319, *amended by* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 12.01 1993 Tex. Gen. Laws 3586, 3766 (current version at Tex.Code Crim. Proc. Ann art. 38.07 (Vernon Supp. 1997)). The present statute dispenses with the corroboration requirement for victims less than eighteen years old.

exists which would corroborate V.T.'s allegations either. *See Scoggan v. State,* 799 S.W.2d 679, 681 n. 5 (Tex.Crim.App.1990); *Zule v. State,* 802 S.W.2d 28, 32–33 (Tex. App.—Corpus Christi 1990, pet. ref'd).

## FINDINGS OF FACT

## AND

## CONCLUSIONS OF LAW

Based on this evidence, the court made the following findings of fact and conclusions of law which are pertinent to this opinion:

FINDINGS OF FACT:

1. The indictment in the above-styled and numbered cause was returned by the Grand Jury February 3rd, 1993, based upon a presentation by the District Attorney based upon reports by [V.T.] complaining of her father, David Lloyd Thomas. That [V.T.] did not testify before the Grand Jury.

2. That no presentment to the Grand Jury was made concerning whether or not an outcry witness existed.

3. That the District Attorney's Office did not communicate with the wife of the defendant, who was indicated to be the outcry witness, prior to the indictment being returned by the Grand Jury.

4. That the indictment was dismissed for the following stated reason, "Unable to corroborate victim's testimony under Art. 38.07 TCCr Proc."

5. That the District Attorney for the 52nd Judicial District testified that she dismissed the indictment for the reasons stated above as set forth in the Motion to Dismiss presented to the Court July 9th, 1993. That the District Attorney further testified that she did not at any time believe that [V.T.] had fabricated the statements or that there was a lack of probable cause to believe that the defendant committed the offense charged in the indictment.

6. That neither the Petitioner's wife, who was believed by the Attorney for the State at the time of indictment to be the outcry witness, and who was available at the time of the hearing, nor the complainant, [V.T], were called to testify concerning their knowledge of this case.

7. That evidence showed that the complaining witness, [V.T.], was rebellious, had conflicts with her father, and had engaged in heavy kissing with her boyfriend.

8. That Petitioner testified that the sexual assaults alleged in the indictment never occurred.

CONCLUSIONS OF LAW

5. That the Petitioner has not met the burden of proof by showing that the attorney for the State of Texas dismissed the indictment because of an absence of probable cause to believe that the defendant committed the offense, rather than because of the reasons stated by the attorney representing the State in the motion to dismiss, nor has the Petitioner proven that statements of the complainant, [V.T.], were fabricated.

### SUFFICIENCY OF THE EVIDENCE

■ The expunction statute allows a person who was arrested, indicted, and had the indictment dismissed to have all records expunged if the court finds that the indictment was dismissed because the presentment had been made "because of mistake, false information, or other similar reason indicating absence of probable cause at the time of the dismissal to believe the person committed the offense...." TEX.CODE CRIM.PROC. ANN. art. 55.01(a)(2)(A). Thus, in this instance, the critical question is whether probable cause existed when the grand jury returned the indictment. This inquiry is made as of the time of the dismissal.[4]

---

4. When the facts are not contested and there is no conflict in the evidence directed to the issue, the question of probable cause is a question of law for the court. *Kelley Richey v. Brookshire Grocery Co., d/b/a Super 1 Food Store,* 952 S.W.2d 515, 516–17 (Tex.1997). However, when the facts are disputed, the trier of fact must weight evidence and resolve conflicts to determine if probable cause exists, as a mixed question of law and fact. *Id.*

Thomas assumed the burden of proving "no probable cause," and the court found that he failed to meet that burden. Fairly read, his first point is a complaint of factual sufficiency of the evidence to support the court's adverse determination of the probable cause issue. Because Thomas is attacking an adverse finding on an issue on which he had the burden of proof, we treat the point as a refusal to find no probable cause. *See Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989).

### STANDARD OF REVIEW

If the party who had the burden of proof and received a negative finding raises a "contrary to the great weight and preponderance of the evidence" point, *i.e.,* asserts that the failure to affirmatively find the fact in question is contrary to the evidence, the reviewing court must sustain the failure to find unless, considering all the evidence, the finding is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust. *Ames v. Ames,* 776 S.W.2d 154, 158 (Tex.1989); *Cropper v. Caterpillar Tractor Co.,* 754 S.W.2d 646, 651 (Tex.1988); *see also Sterner,* 767 S.W.2d at 690. Thomas' factual-sufficiency complaint is a "contrary to the great weight and preponderance of the evidence" point.[5]

In evaluating a claim regarding sufficiency of the evidence, the same standard is used for a bench trial as for a jury trial. *Zieben v. Platt,* 786 S.W.2d 797, 799 (Tex.App.—Houston [14th Dist.] 1990, no writ); *Gandy v. Culpepper,* 528 S.W.2d 333, 335 (Tex.Civ.App.—Beaumont 1975, no writ).

We must, if reversing for factual insufficiency, detail the evidence relevant to the issue in consideration and state why it is factually insufficient or so against the great weight and preponderance of the evidence as to be manifestly unjust; why it shocks the conscience; or clearly demonstrates bias. *Jaffe Aircraft Corp. v. Carr,* 867 S.W.2d 27, 28 (Tex.1993); *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986).

---

5. Had he asserted a "no-evidence" point, he would be contending that the issue of no probable cause was established as a matter of law. *See Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989). When the party who had the burden

### PROBABLE CAUSE

We understand that a showing of insufficient evidence to convict does not equate to a lack of probable cause to indict. *Harris County Dist. Attorney's Office v. M.G.G.,* 866 S.W.2d 796, 799 (Tex.App.—Houston [14th Dist.] 1993, no writ); *State v. Sink,* 685 S.W.2d 403, 406 (Tex.App.—Dallas 1985, no writ). The petitioner in an expunction proceeding brought under article 55.01(a)(2) must prove that the grand jury presented the indictment in question on the basis of erroneous or false information. *Id.*

The standard for probable cause to indict is the same as that for probable cause to arrest. *See Garcia v. State,* 775 S.W.2d 879, 881 (Tex.App.—San Antonio 1989, no pet.). The testimony of one witness can suffice to establish probable cause. *See Perez v. State,* 590 S.W.2d 474, 478 (Tex.Crim.App. [Panel Op.] 1979); *Victoria v. State,* 522 S.W.2d 919, 923 (Tex.Crim.App.1975). The grand jury is not limited to evidence which would be admissible at trial when it determines whether to present an indictment. *In re P.A.C.,* 562 S.W.2d 913, 916 (Tex.Civ. App.—Amarillo 1978, no writ); *In re D.W.M.,* 556 S.W.2d 390, 392 (Tex.Civ.App.— Waco 1977), *rev'd on other grounds,* 562 S.W.2d 851 (Tex.1978).

### ANALYSIS

The grand jury presented the indictment based only on Gately's summary of the evidence. That evidence consisted of the 1992 DHS report and a conversation overheard by McKenna. There was and is no direct testimony or physical evidence that Thomas committed the offense. The evidence suggesting that he did is based on hearsay—admissible hearsay perhaps, but hearsay nonetheless.

Opposing evidence consists of Thomas' testimony that he did not commit the offense and testimony of three of V.T.'s siblings who knew no facts that suggested to them that

---

of proof on an issue receives a negative finding, that finding represents a refusal to find the fact from a preponderance of the evidence. *See id. Sterner's* two-step analysis would apply to such a review. *Id.*

the offense occurred. Neither V.T., who was 21 years old at the time of this hearing, nor her mother testified before the grand jury or at the expunction hearing. Woods testified that she had been told that V.T. was lying about the allegations. Further, Thomas presented a substantial amount of evidence that V.T. had a motive to falsely accuse him of the offense. *See Thomas,* 916 S.W.2d at 545 (holding that evidence that V.T. fabricated the allegations of sexual abuse is relevant to a determination of the reasons that the indictment was presented then dismissed).

CONCLUSION

■ Considering all of the evidence, we find the court's refusal to find an absence of probable cause to be so against the great weight and preponderance of the evidence as to be manifestly unjust. *Jaffe Aircraft Corp.,* 867 S.W.2d at 28; *Pool,* 715 S.W.2d at 635. We sustain point one.

### CONSTRUCTION OF ARTICLE 55.01

Thomas argues in his second point that the court erred by "failing to give the expunction statute the most liberal construction possible." He cites the perceived inequity of article 55.01(a)(1)(A) which allows for the expunction of an arrest if the accused is acquitted by a jury even though expunction is not available when the State dismisses an indictment because of insufficient evidence to prove the allegations beyond a reasonable doubt. TEX.CODE CRIM. PROC. ANN. art. 55.01(a)(1)(A). We address this point only because of its possible application on retrial.

■ The right to expunction is a statutory privilege created by the enactment of article 55.01. *Thomas,* 916 S.W.2d at 543. The provisions of the statute are mandatory and exclusive, and a petitioner does not qualify for expunction until each requirement has been met. *Id.* The courts possess no equitable authority to enlarge upon the plain meaning of the statute. *Id.*

The San Antonio Court of Appeals has stated that article 55.01 should be given "the most comprehensive and liberal construction possible to effectuate [its] purpose." *State v. Arellano,* 801 S.W.2d 128, 132 (Tex.App.— San Antonio 1990, no writ). This court and others have cited *Arellano* for the proposition that the statute should be construed liberally in appropriate circumstances. *See, e.g., Harris County Dist. Attorney's Office v. R.R.R.,* 928 S.W.2d 260, 263–64 (Tex.App.— Houston [14th Dist.] 1996, no writ); *Thomas,* 916 S.W.2d at 543; *Ex parte E.E.H.,* 869 S.W.2d 496, 497 (Tex.App.—Houston [1st Dist.] 1993, writ denied); *but cf. Texas Dep't of Pub. Safety v. Katopodis,* 886 S.W.2d 455, 458 (Tex.App.—Houston [1st Dist.] 1994, no writ) ("[The statement that article 55.01 should be given the most liberal construction], albeit sweeping, was written in the context of a very narrow issue.")

The Fourteenth Court of Appeals in Houston construed the statute liberally by holding that the quashing of an indictment is tantamount to a dismissal for purposes of article 55.01. *R.R.R.,* 928 S.W.2d at 263–64.

In *Thomas,* we held that article 55.01 must be construed liberally when determining what constitutes relevant evidence in an expunction hearing. *Thomas,* 916 S.W.2d at 544–45. We concluded that evidence that a complainant fabricated the allegations which served as the basis for an indictment is relevant to the issue of why that indictment was presented and dismissed. *Id.* at 545.

The First Court of Appeals applied a liberal construction of the statute when it determined that a petitioner can obtain expunction of "less than all charges arising from a single arrest." *E.E.H.,* 869 S.W.2d at 498. In *E.E.H.,* the petitioner had been arrested on a single occasion for driving while intoxicated, possession of a controlled substance, and possession of marihuana. *Id.* at 497. The grand jury no-billed the petitioner on the controlled substance charge; the State dismissed the DWI charge; and the petitioner received a conditional discharge[6] on the marihuana charge. *Id.* The court held that the petitioner was entitled to expunction of the records related to the DWI and controlled substance charges because each of these charges,

---

**6.** *See* Act of May 18, 1989, 71st Leg., R.S., ch. 678, § 1, sec. 481.109, 1989 Tex. Gen. Laws. 2230, 2934, (former TEX. HEALTH & SAFETY CODE ANN.

§ 481.109), *repealed by* Act of May 9, 1991, 72nd Leg., R.S., ch. 141, § 6(a), 1991 Tex. Gen. Laws 726, 730.

standing alone, met the requirements of article 55.01. *Id.* at 498–99. The court rejected the State's argument that the charges amenable to expunction were indivisible from the other charge "because the record of the arrest [was] an indivisible unit...." *Id.* at 498. The court stated, "We perceive no public policy reason to limit the right of expunction to an 'all or nothing' proposition." *Id.*

In *Arellano,* the court applied a liberal construction to article 55.01 by applying it retroactively. *Arellano,* 801 S.W.2d at 132–34. The court did not enlarge upon the plain wording of the statute.

*R.R.R., Thomas, E.E.H.,* and *Arellano* are the only cases we have found in which an appellate court purported to apply a liberal construction to the meaning of article 55.01. Perhaps, "liberal construction" in this context is best understood as interpreting the statute in such a manner as to achieve its purpose. Indeed, the Supreme Court has held that "when the intent and purpose of the Legislature is manifest from a consideration of a statute as a whole, words [may be] restricted or enlarged in order to give the statute the meaning which was intended by the lawmakers." *Bridgestone/Firestone, Inc. v. Glyn–Jones,* 878 S.W.2d 132, 134 (Tex.1994) (quoting *Lunsford v. City of Bryan,* 156 Tex. 520, 297 S.W.2d 115, 117 (1957)). This is accomplished when we "look to the language of the statute, legislative history, the nature and object to be obtained, and the consequences that would follow from alternate constructions." *Union Bankers Ins. Co. v. Shelton,* 889 S.W.2d 278, 280 (Tex.1994).

## DISPOSITION

Having sustained Thomas' factual-sufficiency point, we reverse the order denying Thomas' petition for expunction and remand the cause for a new trial.

DAVIS, C.J., concurring and dissenting.

DAVIS, Chief Justice, concurring and dissenting.

Thomas argues that the evidence is factually insufficient to support the court's conclusion that he failed to prove by a preponderance of evidence that the State dismissed his indictment because it was based on false information indicating a lack of probable cause. The majority agrees, concluding that the court's decision is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust.

The majority also addresses the appropriate construction to be given the expunction statute. My disagreement is not with the discussion of how the statute should be construed but with the court's conclusion that the evidence is factually insufficient to support the denial of Thomas' petition for expunction.

## CONSTRUCTION OF ARTICLE 55.01

The construction problems that can be encountered with the expunction statute are considerable. Justice Vance recently detailed some of the difficulties in applying this statute without enlarging on its plain wording or application. *Ex Parte Andrews,* 955 S.W.2d 178, 179–80 (Tex.App.—Waco 1997, n.w.h.). Considering the variety of nuances that our sister courts have given the expunction statute, perhaps the time has come for our legislature to revisit this tortured statute. Thus, I concur in the majority's treatment of the second point in this cause. However, I respectfully dissent to the majority's resolution of Thomas' factual sufficiency challenge for the reasons set forth below.

## SUFFICIENCY OF THE EVIDENCE

As the State correctly argues, because Thomas does not contest the court's findings of fact, he cannot challenge the court's legal conclusions on the basis of factual insufficiency. *See Browder v. Eicher,* 841 S.W.2d 500, 502 (Tex.App.—Houston [14th Dist.] 1992, writ denied); *First Nat'l Bank v. Kinabrew,* 589 S.W.2d 137, 146 (Tex.App.—Tyler 1979, writ ref'd n.r.e.).

Moreover, assuming for the sake of argument that Thomas could challenge the factual sufficiency of the evidence, I cannot say that the court's conclusion is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Dyson v. Olin Corp.,* 692 S.W.2d 456, 457 (Tex.1985).

Whether Thomas' daughter falsely accused him of sexual assault is vigorously contested.

Thomas denies the charges. One of Thomas' sons said he did not believe his sister was telling the truth about the allegations. All of Thomas' children said they saw no indications that Thomas had sexually assaulted his daughter.

Gately testified that she requested a dismissal of the case because an outcry witness could not be located to comply with article 38.07. She explained that she felt V.T.'s allegations were sufficiently corroborated to present to the jury because her review of the case left her with the impression that V.T.'s mother would be an outcry witness and because her reports indicated that McKenna had overheard a telephone conversation during which V.T's mother asked V.T. whether Thomas "had touched her again." [1]

McKenna testified that she believed the veracity of V.T.'s allegations and knew that V.T. had experienced nightmares and other symptoms. Woods is an experienced caseworker who frequently must assess the credibility of victims when investigating their allegations. She also found V.T.'s complaints to be credible.

From this testimony, the court could have inferred that nightmares and hysterics which V.T. experienced were consistent with the symptoms a person who had been sexually abused would experience. The court also could have inferred that V.T. ran away because she fears Thomas as a result of the alleged sexual abuse.

The evidence presented the court with a disputed fact issue it had to determine. As the finder of fact, the court was the sole judge of the credibility of the witnesses and the weight to be accorded their testimony. *Harris County Dist. Attorney v. Small,* 920 S.W.2d 740, 743 (Tex.App.—Houston [1st Dist.] 1996, no writ) (citing *Hudson v. Winn,* 859 S.W.2d 504, 508 (Tex.App.—Houston [1st Dist.] 1993, writ denied)). The court was in the best position to observe the demeanor of the witnesses and to make this determina-

tion. Even though we may disagree with the court's resolution of these issues, we may not substitute our judgment for the court's.

For these reasons, I would overrule Thomas' first point and affirm the judgment. Because the majority does not do so, I dissent.

---

1. The majority seems to place some weight on the fact that Gately's presentation to the grand jury was based on hearsay information. However, the grand jury is not bound by the rules of evidence. Tex.R.Crim. Evid. 1101(c)(2); *accord In re P.A.C.,* 562 S.W.2d 913, 916 (Tex.Civ.App.—Amarillo 1978, no writ); *In re D.W.M.,* 556 S.W.2d 390, 392 (Tex.Civ.App.—Waco 1977), *rev'd on other grounds,* 562 S.W.2d 851 (Tex. 1978). Thus, the admissibility of the evidence upon which the grand jury based Thomas' indictment is irrelevant.