Calvin Messer and Billie Messer v. John C. Slattery and Beatrice L. Slattery

















IN THE
TENTH COURT OF APPEALS
 

No. 10-98-038-CV

     CALVIN MESSER AND BILLIE MESSER,
                                                                              Appellants
     v.

     JOHN C. SLATTERY,
                                                                              Appellee
 

From the 85th District Court
Brazos County, Texas
Trial Court # 43,589-85
                                                                                                                   

O P I N I O N
                                                                                                                   

      Calvin and Billie Messer filed a wrongful death action against John Slattery alleging his
negligence proximately caused the death of their five-year-old son.


 A jury failed to find that
Slattery’s negligence, if any, proximately caused the death of the Messers’ son. The Messers bring
this appeal asserting in two points of error that the court erred in entering judgment on the verdict
and in denying their motion for new trial because: (1) there is no evidence or insufficient evidence
to support the verdict; and (2) they proved Slattery’s negligence as a matter of law. We will affirm
the judgment.
BACKGROUND
      Around 6:00 p.m. on January 6, 1995, the Slatterys were traveling south in the right-hand lane
of Texas Highway 6 in a rural area approximately ten miles south of College Station. The Messers’
five—year-old son William, described by his special education teacher as having a “pervasive
developmental delay,” was dancing naked near the middle of the two southbound lanes of the
highway. When Slattery saw William in the roadway, he could not move to the left because another
car was in the left-hand lane. Slattery immediately hit the brakes and veered slightly to the right. 
Despite his efforts, Slattery’s car collided with William, who died that evening as a result of the
injuries sustained in the collision.
SUFFICIENCY OF THE EVIDENCE
      The Messers’ first point challenges the legal and factual sufficiency of the evidence to support
the jury’s failure to find negligence on Slattery’s part. Their second point asserts that they established
Slattery’s negligence as a matter of law. The second point actually sets forth the more precise
terminology to be employed by a party with the burden of proof who contends on appeal that “no
evidence” exists to support an adverse finding. See Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex.
1983); Crow v. Burnett, 951 S.W.2d 894, 897 (Tex. App.—Waco 1997, writ denied). Accordingly,
we will address the Messers’ first and second points together.
Standard of Review
      When we consider a matter-of-law challenge to an adverse fact finding on which the appellant
had the burden of proof at trial, we apply the two-step analysis of Sterner v. Marathon Oil Co. 767
S.W.2d 686, 690 (Tex. 1989). First, we examine the record for some evidence supporting the
finding, disregarding all evidence to the contrary. Id. at 690; Johnson Roofing, Inc. v. Staas
Plumbing Co., 823 S.W.2d 783, 786 (Tex. App.—Waco 1992, no writ). If some evidence supports
the finding, our inquiry ends. Id. If not, we then examine the entire record to determine whether
the contrary was established as a matter of law. Id. 
      When the party with the burden of proof at trial claims an adverse factual determination is against
the great weight and preponderance of the evidence, we must sustain the adverse finding “unless,
considering all the evidence, the finding is so contrary to the great weight and preponderance of the
evidence as to be manifestly unjust.” Ex parte Thomas, 956 S.W.2d 782, 786 (Tex. App.—Waco
1997, no pet.) (citing Ames v. Ames, 776 S.W.2d 154, 158 (Tex. 1989); Cropper v. Caterpillar
Tractor Co., 754 S.W.2d 646, 651 (Tex. 1988)).
Pertinent Testimony
Billie Messer
      The Messers kept their doors locked because they were concerned William might get out and
wander into the road. Billie Messer acknowledged that on at least one occasion William had run
away from his classroom at school and crossed the street to a playground. The Messers admonished
their other children to always keep the doors locked for their brother’s safety.
      Billie Messer was at home with her children on the evening in question. As her children watched
television in the living room, she took two telephone calls in the bedroom. When she returned to the
living room, she saw that the door was open and William was gone. She saw cars stopped on the
highway, ran down to the road, and found that her son had been hit by Slattery’s car. She and two
of her children followed the ambulance to the hospital where William was later pronounced dead. 
The other child remained at home to meet his father when he arrived home from a trip to Houston
and tell him what had happened.
John Slattery
      John Slattery was driving about 55 miles per hour in the right-hand southbound lane of the
highway. As nightfall approached, visibility was growing poorer. Slattery’s headlights picked up
an object in the road. He had not seen any of the vehicles ahead of him taking evasive action or
applying their brakes. When Slattery realized a boy was standing in his lane, he could not move to
the left because a car was in that lane. He hit his brakes but did not immediately swerve to the right
because he believed someone might be standing on the shoulder trying to coax the boy out of the
road. Slattery’s car then collided with William before coming to rest on the side of the road.
Allison Giles
      Allison Giles was passing Slattery when William came into her view. She was driving between
60 and 65 miles per hour. She recalled seeing the cars ahead of her applying their brakes before the
collision. Giles gave the investigating officer a written statement on the evening of the collision in
which she estimated she was “still approximately 50 feet away from [William]” when she came
“almost to a complete stop” and Slattery’s car hit him. When counsel asked Giles in her March 1997
deposition how far away William was when she first saw him, Giles replied:
Gosh, I am not real good at judging distance, but whenever I first saw–I first saw like
just a flash of color and so I braked and I realized that it was a child, so I really slammed
on my brakes and whenever I was almost to a complete stop, he was probably still a good
30 foot [sic] in front of me, maybe, you know. I guess, you know, a little bit–probably the
length of this room or so I guess is–maybe a little bit longer than that. I am not real good
at judging distance.

      Counsel asked Giles in the deposition to estimate the number of seconds she was able to observe
William from the time she first saw him until he moved into the other lane and was hit by Slattery’s
car. Giles replied:
Oh, probably five to ten seconds. You know, it seemed like forever, but probably five
to ten seconds max. I mean because I had stopped and he was dancing around and, you
know, looked at me like whatever, if you are not going to play with me, and danced over
into the other lane, so it seemed like an eternity, but I imagine it was probably just five or
ten seconds.

She later qualified this by agreeing on redirect that it could have been as little as “a second or two.”
      Giles also testified in her deposition that William was “[p]robably about 10, 20 feet” in front of
her car when Slattery’s car hit him. However, she stated on at least five occasions in her deposition
that her sense of time and distance was not very good or was distorted by the shock of the events she
had witnessed. She described herself as “quite traumatized” by the events she witnessed. She
testified that Slattery’s view of William was probably blocked in part by her car. She concluded that
Slattery was not driving recklessly that evening and that there was nothing he could have done to
avoid the collision.
Frank Syfan
      Syfan is an engineer who was driving a pickup about 500 feet behind Slattery. Of the
eyewitnesses to the collision, Syfan provided the most precise testimony concerning times and
distances. He recalled seeing Giles passing Slattery when both “hit their brakes at approximately the
same instant.” He testified that none of the motorists ahead of them had applied their brakes as they
passed the spot where the collision occurred. Syfan returned to the scene the next day and made his
own measurements of the distances involved. He concluded Slattery could have done nothing to
avoid the collision.
Other Evidence
      William’s special education teacher talked about his diagnosis and his performance in school. 
William displayed “autistic tendencies” though he was never “medically diagnosed” with autism. 
She recalled that he had run away from the classroom on five occasions and found a “block or two
away” each time. On one of these occasions he ran across the street in “a pouring-down rain” and
was found standing on the playground of another school. Testing conducted when William was four
and one-half years old revealed him to be at the cognitive level of a two-and-one-half-year-old. 
William’s teacher believed he did not possess sufficient judgment to perceive when he was in danger.
      The DPS trooper who investigated the accident concluded that the only factor which contributed
to the collision was William’s failure to yield the right-of-way. He believed Slattery reacted properly
when he saw William in the road and could have done nothing to avoid hitting him.
      An accident reconstructionist reviewed all the witnesses’ statements and the officer’s report and
examined the accident scene. He observed that Giles’ statements contain “a number of
inconsistencies” regarding time and distance. He told the jury of studies which have established that
at nighttime a driver usually has more difficulty perceiving objects moving into view from the left
because vehicle headlights are aimed slightly to the right to avoid creating unnecessary glare for
oncoming traffic. He concluded that Slattery was not negligent and could have done nothing to avoid
the accident.
      On appeal, the Messers suggest for the first time that Slattery violated a traffic ordinance by
passing Giles on the right-hand side in violation of section 545.057 of the Transportation Code. See
Tex. Transp. Code Ann. § 545.057 (Vernon 1999). However, the Messers did not plead
negligence per se. They did not produce any testimony at trial regarding section 545.057. In fact,
Giles and Slattery both testified that she was passing him when they came upon William in the road. 
Accordingly, we do not consider whether Slattery may have violated this traffic ordinance.
Legal Sufficiency/Negligence as a Matter of Law
      Every eyewitness to the collision, the investigating officer, and the accident reconstructionist all
testified that Slattery could not have done anything to avoid hitting William. Giles testified that
Slattery’s view was probably partially blocked by her car. In the officer’s opinion, Slattery reacted
appropriately under the circumstances. This constitutes some evidence that Slattery acted reasonably
and was not negligent. See Sterner, 767 S.W.2d at 690; Johnson Roofing, 823 S.W.2d at 786. 
Because the record contains some probative evidence supporting the jury’s failure to find negligence,
the evidence could not establish negligence as a matter of law. See Johnson Roofing, 823 S.W.2d
at 786. Accordingly, we overrule the Messers’ second point.
Factual Sufficiency
      To support their factual sufficiency challenge, the Messers seize primarily upon Giles’ testimony
that William “was probably still a good 30 [or 50 feet] in front of [her]” when she came “almost to
a complete stop” and that she “had stopped” and was able to observe William for “five to ten
seconds” before he moved into the other lane as evidence that Slattery had time to avoid the collision. 
They also refer to Giles’ testimony that William was looking at her (i.e., facing to the left) to suggest
that Slattery’s assumption someone was standing on the right side of the road attempting to coax
William off the highway was not reasonable under the circumstances.
      From this evidence and Slattery’s testimony they draw the following “undisputed” conclusions
from which “the only reasonable inference that can be drawn is that the negligence of John Slattery
was a proximate cause of the accident”:
      •    Giles was able to stop and observe William before the collision;
      •    Giles was ahead of Slattery before the collision;
      •    Slattery was in the right lane;
      •    Slattery passed Giles to strike William;
      •    “[Slattery] only knew to turn two feet to avoid the collision”; and
      •    Slattery made no attempt to turn to the right because of his mistaken belief that William
might have turned around and ran to the right.

Because of internal inconsistencies in Giles’ testimony and discrepancies between her testimony and
that of Slattery and Syfan, we cannot agree that all of the above are “undisputed” or necessarily point
to the conclusion that Slattery acted negligently and/or proximately caused William’s death.
      The undisputed evidence does establish:
      •    Slattery was in the right lane;
 
      •    Giles’ car was to his left so Slattery believed his only real option was to turn slightly to
avoid hitting William because he thought William might run off the road at the urging of
someone on the roadside and Slattery did not want “to follow [William] right onto the
shoulder”; and
 
      •    he did not make a dramatic move to the right because he feared he might hit William as
William tried to run off the road.

      Giles testified inconsistently about her ability to stop and observe William before the collision. 
Counsel never asked her how long she was able to observe William after stopping. Rather, counsel
asked her to tell the jury “how many seconds [she] saw William in the road from the time [she] first
saw him until he stepped from [her] lane into the lane next to [hers].” She estimated “five to ten
seconds max.” However, Giles concluded her testimony on redirect by agreeing that she may have
observed William for “as short as a second or two” during the period in question. Thus, the record
does not undisputedly show that Giles stopped and observed William for between five and ten seconds
before Slattery’s car hit him.
      The parties agree that Giles was in the process of passing Slattery when William came into their
view. Giles’ testimony suggests that Slattery was behind her until just before impact, which Giles
recalled to be between ten and twenty feet in front of her car. Slattery’s testimony confirms that
Giles’ car was to his left but he had no clear recollection of whether she was in front of him or behind
him at the time of the collision. Syfan recalled that both vehicles were “about equal” although Giles
was “slightly behind” Slattery.
      This evidence does not conclusively establish that “the Giles car was ahead of [Slattery’s] vehicle
prior to the collision” as suggested by counsel. Rather, the evidence tends to show their vehicles
were roughly side-by-side and perhaps that Giles was able to bring her car to a stop slightly sooner
than Slattery. However, based on the testimony of the accident reconstructionist concerning a
driver’s nighttime perceptions and Giles’ testimony that her car partially obstructed Slattery’s view
of William, we cannot say this evidence leads to only one reasonable inference, namely that Slattery
was negligent and/or a proximate cause of William’s death.
      Finally, the Messers challenge as unreasonable Slattery’s assumption or expectation that William
was about to run off the road to Slattery’s right. They do so primarily on the basis of an inference
they draw from Giles’ testimony that William was facing to the left when the collision occurred. 
However, they misread her testimony. Giles testified, “[William] was dancing around and, you
know, looked at me like whatever, if you are not going to play with me, and danced over into the
other lane.” As we read this testimony, William initially was dancing in the left lane and looking in
Giles’ direction. Then, he moved over to the other lane. Giles did not testify at any point that
William continued to look at her when he moved to the right lane. In fact, her testimony supports
an equally plausible inference that William was moving to the right at the moment the collision
occurred. This would tend to support Slattery’s assumption which the Messers find unreasonable.
      Based on the record before us, we conclude that the jury’s verdict is not “so contrary to the great
weight and preponderance of the evidence as to be manifestly unjust.” See Ex parte Thomas, 956
S.W.2d at 786. Accordingly, we overrule the Messers’ first point.
      We affirm the judgment.
                                                                               REX D. DAVIS
                                                                               Chief Justice
Before Chief Justice Davis
            Justice Vance and
            Justice Gray
Affirmed
Opinion delivered and filed August 4, 1999
Do not publish