**The STATE of Texas, Appellant,**

v.

**Lindel ARELLANO, Appellee.**

No. 04–89–00556–CV.

Court of Appeals of Texas,
San Antonio.

Oct. 3, 1990.

Christian Joe Gros, Dist. Attys. Office, San Antonio, for appellant.

Oscar C. Gonzalez, David Weiner, San Antonio, for appellee.

Before REEVES, CARR and BISSETT, JJ.

## OPINION

GERALD T. BISSETT, Justice.[1]

This is an appeal by the State of Texas, acting by and through Fred G. Rodriguez, Criminal District Attorney of Bexar County, Texas, from an order granting Lindel Arellano expunction of her criminal record. We affirm.

Lindel Arellano, hereinafter "appellee," filed her petition for expunction of her criminal record on May 12, 1989. The State of Texas opposed the granting of the requested relief. Judgment granting expunction of appellee's criminal record was signed on October 19, 1989, following a hearing held on August 23, 1989.

TEX.CODE CRIM.PROC.ANN. art. 55.01 (Vernon Supp.1987), in effect at all times relevant to this appeal, provided:

A person who has been arrested for commission of either a felony or misdemeanor is entitled to have all records and files relating to the arrest expunged if each of the following conditions exist:

(1) an indictment or information charging him with commission of a felony has

---

1. Assigned to this case by the Chief Justice of the Supreme Court of Texas pursuant to TEX.

GOV'T CODE ANN. § 74.003 (Vernon 1989).

not been presented against him for an offense arising out of the transaction for which he was arrested, or if an indictment or information charging him with commission of a felony was presented, it has been dismissed and the court finds that it was dismissed because the presentment had been made because of mistake, false information, or other reason indicating absence of probable cause at the time of the dismissal to believe the person committed the offense or because it was void;

(2) he has been released and the charge, if any, has not resulted in a final conviction, and is no longer pending and there was no court ordered supervision under Article 42.13, Code of Criminal Procedure, 1965, as amended, nor a conditional discharge under Section 4.13 of the Texas Controlled Substances Act (Article 4476-15, Vernon's Texas Civil Statutes); and

(3) he has not been convicted of a felony in the five years preceding the date of the arrest.

Appellee, in the instant case, was arrested in Bexar County, Texas, on or about February 17, 1971, for the alleged offense of murder with malice. The case against her was styled "State of Texas v. Lindel Arellano," Cause No. 71-281. She was indicted for said offense by the grand jury of Bexar County. The State filed a motion to dismiss the indictment on May 6, 1971, wherein Mr. Bill M. White, assistant district attorney for Bexar County, stated:

I don't feel that we could overcome the self-defense or accident theorys (sic) in this case. And the evidence available to the State is insufficient in my opinion to sustain any type of conviction.

Therefore, no further purpose can be served in continuing this cause on the docket of this Honorable Court.

The Honorable James E. Barlow, District Judge of the 186th District Court of Bexar County, dismissed the indictment against appellee by order signed on May 6, 1971.

The State contends in a single point of error that the trial court erred in granting the expunction of appellee's 1971 criminal record because it "lacked jurisdiction to entertain the petition for expunction." We disagree.

The State argues that appellee is not entitled to expunction of her criminal record relating to an arrest which occurred on or about February 17, 1971, because the statutory remedy of expunction was not available prior to the statute's effective date of August 29, 1977. It takes the position that granting the expunction requested by appellee requires giving Article 55.01 of the Code of Criminal Procedure retroactive application, in contravention of the presumption that statutes be given prospective effect.

■ As a general rule, a statute is presumed to be prospective in its operation unless expressly made retrospective. TEX. GOV'T CODE ANN. § 311.022 (Vernon 1988); *Merchant's Fast Motor Lines, Inc. v. Railroad Com. of Texas*, 573 S.W.2d 502, 504 (Tex.1978); *Texas Dept. of Public Safety v. Sefcik*, 751 S.W.2d 239, 240 (Tex.App.—San Antonio 1988, no writ). Article 55.01, the expunction statute, is not expressly made retrospective. The presumption, however, is not conclusive.

■ Expunction of a criminal record was unknown to the common law. The purpose of Article 55.01 is to provide the means for a person who has been arrested and indicted for a criminal offense as a result of mistake, false information, or other reason indicating absence of probable cause for the arrest or indictment, to expunge those records. *See Texas Dept. of Public Safety v. Failla*, 619 S.W.2d 215, 217 (Tex.App.—Texarkana 1981, no writ). The expunction statute is essentially remedial in nature and should be given the most comprehensive and liberal construction possible. *See Burch v. City of San Antonio*, 518 S.W.2d 540, 544 (Tex.1975); *Manuel v. Spector*, 712 S.W.2d 219, 222 (Tex.App.—San Antonio 1986, orig. proceeding).

■ Evidence of a legislative intent to give retroactive effect to the expunction statute may be gleaned from a statute's legislative history. *See Howard v. State*, 690 S.W.2d 252, 254 (Tex.Crim.App.1985)

(legislative intent of a statute may be extracted from the records of its legislative history); TEX.GOV'T CODE ANN. § 311.023(3) (Vernon 1988) (legislative history of statute may be considered in construing a statute).

■ The controlling circumstances in interpreting a statute having retrospective or prospective effect, where the statute is silent as to its effect, is the intention of the legislature. *Deacon v. City of Euless*, 405 S.W.2d 59, 61 (Tex.1966); *Cass v. Estate of McFarland*, 564 S.W.2d 107, 110 (Tex.App. —El Paso 1978, no writ) (statutes not given retroactive effect in absence of a clearly expressed legislative intent to the contrary). This comports with the general rule that the dominant consideration in construing a statute is the intention of the legislature. *See, generally, Burlington Northern Railroad Co. v. Harvey*, 717 S.W.2d 371, 375–76 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). Similarly, the Code of Criminal Procedure, provides that in construing a statute, a court may consider among other matters 1) the object sought to be attained, 2) the circumstances under which the statute was enacted, 3) legislative history, 4) consequences of a particular construction, and 5) title (caption), preamble, and emergency provision. *See* TEX.GOV'T CODE ANN. § 311.023 (Vernon 1988).

Chapter 55 of the Texas Code of Criminal Procedure, the "Expunction of Criminal Records Act," ch. 747, 1977 Tex.Gen.Laws 1980 (now Article 55.01) was enacted in 1977 by passage of Senate Bill (SB) 471. The legislative history of SB 471 and its House companion, HB 814, make up the history of the passage of Chapter 55. SB 471 was first heard in the Senate Jurisprudence Committee subcommittee on April 5, 1977. Senator Schwartz, the sponsor of the bill, explained the purpose of the bill and stated, among other statements:

> Now, that's, you know, it ought to be better than that. But it does require all of those things and if you meet those standards, Lord knows if you can't have your record expunged then, you know, we're not dealing in a just society. But we haven't reached that society yet in this state and that's a good place to start, I would like to improve on that at some time, I think that we do people a great disservice in our society by not expunging certain records and this will give us a beginning.

Although the identity of the speaker is not clear, it was also stated in support of the bill:

> If you've been arrested and you've got an arrest record, and no circumstances exist, there is no reason at all in a just society why you should be penalized for the rest of your life for the existence of that record.

The bill was heard by the full Senate on April 28, 1977. Senator Schwartz again spoke for the bill, saying:

> It's almost unthinkable to me that in Texas in 1977 that we still have thousands of people who've been arrested by a mistake, by accident, in cases in which there were no charges to be filed ultimately but their records reflect for the rest of their lives a charge which was filed against them and they go through life with a felony.

The House Criminal Jurisprudence Committee considered HB 814 on March 15, 1977. During the public hearing, Rep. Watson, the sponsor of the bill, provided the reasons that motivated him to introduce the bill:

> This is a little bill that we've had introduced two other sessions that I recall and it came about because of an incident that happened in, I believe, Pasadena, that I became quite concerned with. And it's a matter of expunction of records of an individual who may be charged with some crime and found not guilty or for some reason is not—and all we're doing is trying to expunge his record.

After reading part of the bill, Rep. Watson introduced the father of the person whose records he sought to have expunged, Mr. Jack Vaughan. Rep. Watson explained:

> And we have the person here today that—whose son was involved in an incident that caused, I guess caused this bill, because he was a personal friend of mine

and when I became a legislator, I was interested in this case because it had followed his son through college and where he is now.

Mr. Vaughan then testified on the bill. He explained that six years earlier, his son had been at a party in an apartment and when a fight broke out, the police came and found marihuana and arrested everyone at the party, including his son. The charges against his son were dropped, but the record of the arrest kept coming up, such as in applications for the military and for law school, when the son was asked whether he had ever been arrested. Mr. Vaughan stated, by way of conclusion:

> I think he's been found not guilty. I think he's been—the charges have been dropped by the State of Texas and I think this bill, this House Bill will let society drop the charges against him.

In closing on the bill, Rep. Watson stated:

> There's another reason why I introduced this bill. When I served on the grand jury one time and there was a kid in the high school who was accused of stealing a tape deck out of a car and it turned out that it wasn't even, he wasn't even there in the place where the offense occurred. These are the reasons, these are the people that we're trying to help.

▮ The legislative history of Article 55.01 makes it abundantly clear that the legislative intent in passing the statute was to cure the evils attendant to wrongful arrests and subsequent indictments. Moreover, the legislative history contains strong indications that the statute was intended to provide the remedy of expunction to anyone suffering a wrongful arrest, whether such wrongful arrest occurred prior to or after the passage of the statute. Sen. Schwartz's outrage that thousands of people wrongfully arrested were still burdened with an arrest record for the rest of their lives, and Rep. Watson's interest in helping specific individuals whose wrongful arrests motivated him to introduce the legislation in the House, provide evidence of the legislative intent to give retroactive effect to the expunction statute. Obviously, the *wrongfulness* of an arrest does not, or

should not, depend on whether the arrest occurred prior to or after the passage of the statute. Where, as here, there is no old law to compare with the statute being examined, it is particularly important to bear in mind the evil confronting the legislature at the time of the passage of the statute and the remedy sought to be accomplished. *See, Russell v. Safeco Ins. Co. of America,* 696 S.W.2d 678, 679 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). Giving Article 55.01 retroactive effect does no more than serve the public policy of giving the most comprehensive and liberal construction possible to effectuate the purpose of what is, without question, a remedial statute. To hold otherwise would run afoul of the presumption that in enacting a statute, a just and reasonable result is intended. *See* TEX. GOV'T CODE ANN. § 311.021(3) (Vernon 1988).

The State relies upon *State v. Humble Oil & Refining Co.,* 141 Tex. 40, 169 S.W.2d 707, 708–09 (1943), for the proposition that the general rule in Texas concerning retroactivity of statutes is that a statute which provides a remedy where no remedy previously existed is presumed to operate prospectively only, unless a contrary intent is clearly indicated in the statute itself. It further relies upon *Harris v. State,* 733 S.W.2d 710, 711 (Tex.App.—San Antonio 1987, no writ) for its assertion that the passage of Article 55.01 "created a right and a remedy where none previously existed." The State also relies upon *Texas Commission of Law Enforcement Officer Standards & Education v. Watlington,* 656 S.W.2d 666, 668 (Tex.App.—Tyler 1983, writ ref'd n.r.e.) for its contention that the "statutory remedy of expunction was not available prior to its effective date of August 29, 1977." The State's reliance on those cases is misplaced. Each case is distinguishable on the facts from the case at bar. In *Humble Oil,* the Supreme Court held that a tax statute that permitted offsets against current or future tax liabilities could not be given retroactive effect so as to allow the taxpayer an offset for its overpayment of taxes prior to the effective date of the new statute. Crucial to the court's holding was its statement:

It is the settled law of this State, as well as the law generally grounded on public policy, that, in the absence of a statute authorizing it, in an action by the State or any municipality for taxes, offsetting of an indebtedness due by the State or municipality to the tax debtor will not be allowed.

*Id.*, 169 S.W.2d at 708. Thus, the court in *Humble Oil* addressed the question of the retroactivity of a statute that conflicted with previous public policy. In the present case, there was no previous public policy against expunction of criminal records; there simply was no law authorizing it prior to the passage of Article 55.01.

In *Harris*, appellant was found guilty of the felony offense of attempted burglary of a habitation, and was sentenced to three years' imprisonment. Thereafter, the trial judge granted probation to appellant, thereby suspending imposition of the sentence. Three years later, on November 10, 1980, the trial court determined that appellant had satisfactorily fulfilled the conditions imposed upon him and ordered that the conviction be set aside and the indictment be dismissed. This Court, in affirming the trial court's order denying expunction of appellant's criminal record, stated:

> Because appellant did not sustain his burden to prove the information was dismissed by the original trial judge, or a trial judge with jurisdiction, for one of the mandated statutory reasons set out in section (1), the district court hearing the expunction proceedings correctly denied the petition. A petitioner must prove there is compliance with all the statutory requirements. Since the proof in this case failed to show the kind of dismissal intended by the Legislature in section (1), it was not necessary to determine whether appellant showed compliance with the provisions of sections (2) and (3). Nor does this reviewing court reach those questions.

The facts in the case before us are entirely different from the facts in *Harris*. Here, the defendant was never convicted of the offense for which she was charged, and the undisputed evidence shows that she was in compliance with the provisions of subdivisions (2) and (3) of Article 55.01. Moreover, when the State's motion to dismiss the indictment and the order of dismissal are considered together, compliance with subdivision (1) of the article, is apparent in that the trial court's granting of the State's motion to dismiss reflects reason [to dismiss] indicating absence of probable cause at the time of dismissal to believe that Arellano committed the offense.

The appellate court reversed and rendered the trial court's order granting appellee's petition for expunction of criminal records in *Watlington*, decided on August 18, 1983. In that case, on March 17, 1958, in Cause No. 10,213 in the Fifth Judicial District Court of Bowie County, Texas, Watlington waived in writing his right to a jury trial and pleaded guilty to the offense of burglary; the court adjudged him to be guilty of burglary as alleged in the indictment and sentenced him to confinement in the State penitentiary for two years. No appeal was taken from the judgment of conviction. Such sentence was probated; in September, 1958, he was granted an early discharge from probation and the case was dismissed. On July 30, 1976, the District Court of Bowie County entered a judgment nunc pro tunc reciting that a mistake existed in the record of the 1958 judgment of conviction and ordering that the same be set aside and permanently expunged from the records of the court. Thereafter, on January 27, 1981, Watlington filed his original petition for expunction of criminal records requesting relief in accordance with Article 55.01. The petition was granted by the trial court. An appeal followed.

The Tyler Court held in *Watlington*:

> The subsequent judgment nunc pro tunc entered on July 30, 1976, was void and ineffective to expunge the records of the conviction and probated sentence in Cause No. 19,213. Judicial errors, if any, in the rendition of a judgment may not be corrected by a nunc pro tunc proceeding. *Coleman v. Zapp*, 105 Tex. 491, 151 S.W. 1040 (Tex.1912); *Davis v. Davis*, 647 S.W.2d 781 (Tex.App.—Austin 1983, no writ). Furthermore, the ex-

punction of criminal records is a statutory remedy which was not available prior to the effective date of Article 55.01 on August 29, 1977.

Appellee's petition for expunction of criminal records pursuant to Article 55.01, the court's order granting such relief, and the findings of fact and conclusions of law filed by the court (over appellant's objections) all ignore Watlington's guilty plea, felony conviction, probated sentence, failure to appeal and subsequent discharge from probation. Expunction is available only when all of the statutory conditions have been met. The remedy provided by the code was never intended to allow a person who is arrested, pleads guilty to an offense, and receives probation pursuant to a guilty plea to expunge the arrest and court records concerning the offense.

656 S.W.2d at 668. The facts in the instant case are completely different from those in *Watlington*. The problems confronting the legislature at the time of the passage of Article 55.01, the expunction statute, and the remedy sought to be accomplished are well-documented by the comments of the above named legislators. No conflict with prior law or public policy exists such as would militate against retroactive application of the statute. All of the statutory requirements for expunction have been met. The trial court had jurisdiction of the case. The State's point of error is overruled.

The judgment of the trial court is affirmed.