Paul CARSON, Appellant,

v.

The STATE of Texas, City of Arlington, and City of Burleson, Appellees.

No. 2–00–441–CV.

Court of Appeals of Texas, Fort Worth.

Dec. 13, 2001.

William H. "Bill" Ray, Law Office of William H. "Bill" Ray, P.C., Fort Worth, for Appellant.

Jack W. Naranjo, Asst. City Atty., Jay B. Doegey, City Attorney, Arlington, Tim G. Sralla, Taylor, Olson, Adkins, Sralla & Elam, L.L.P., Fort Worth, for Appellee.

Panel B: LIVINGSTON, DAUPHINOT, and WALKER, JJ.

## OPINION ON REHEARING

SUE WALKER, Justice.

We deny the City of Burleson's motion for rehearing. However, we withdraw our previous opinion and judgment issued September 27, 2001, and substitute the following solely to clarify the scope of our ruling concerning the records held by the City of Burleson.

### I. INTRODUCTION

Paul Carson ("Carson") appeals the trial court's denial of his petition for expunction. In a single point, Carson claims the trial court erred by holding that issuance of a Class C misdemeanor citation by mail does not constitute an "arrest" for the purposes of article 55.01 of the code of criminal procedure. *See* TEX.CODE CRIM. PROC. ANN. art. 55.01 (Vernon Supp.2002). In two cross points, the City of Arlington ("Arlington") argues that the judgment ac-

quitting Carson of the misdemeanor offense is void and that therefore Carson did not meet his statutory burden of establishing his right to expunction. Carson was previously employed as a Burleson police officer and named the City of Burleson ("Burleson") as a defendant in his expunction petition. Burleson contends on appeal that expunction of any of its records is improper because any records it possesses related to Carson's misdemeanor offense are personnel records it holds in its capacity as Carson's former employer, not in its general capacity as a governmental entity. We will reverse.

### II. PROCEDURAL HISTORY

Carson was tried and convicted in municipal court in Arlington, Texas of the Class C misdemeanor offense of assault by offensive and provocative physical contact. Carson appealed, and County Criminal Court Number Five of Tarrant County, Texas, affirmed Carson's conviction on July 20, 1999. On August 24, 1999, however, the county criminal court entered a judgment acquitting Carson. The judgment of acquittal indicates that the county criminal court heard a "Motion for Rehearing" and was persuaded to reverse its prior ruling and to enter a judgment of acquittal.

The State previously appealed Carson's judgment of acquittal to this court. We dismissed the State's appeal and held that because the State did not perfect its appeal within 15 days of the court's August 24, 1999 judgment of acquittal, its appeal was untimely. *See id.* art. 44.01(d); *State v. Carson,* 13 S.W.3d 811, 812–13 (Tex. App.—Fort Worth 2000, no pet.) (op. on reh'g). Carson then filed a petition for expunction based on his final judgment of acquittal. *See* TEX.CODE CRIM. PROC. ANN. art. 55.01(a)(1)(A). The trial court denied Carson's petition, and this appeal followed.

### III. Validity of Judgment of Acquittal

Arlington asserts on appeal that no expunction should be allowed because the August 24, 1999 judgment of acquittal is void. Arlington contends that the county criminal court was without jurisdiction to enter the judgment of acquittal thirty-four days after its original July 20, 1999 judgment affirming Carson's conviction.

■ For a criminal judgment to be void, the record must leave no question about the existence of the fundamental defect. *Nix v. State*, 65 S.W.3d 664, 667–68 (Tex. Crim.App.2001). If the record is incomplete, and the missing portion could conceivably show that the defect does not in fact exist, then the judgment is not void, even though the available portions of the record tend to support the existence of the defect. *Id.*

■ We review applicable procedural rules to determine whether, in this case, it is conceivable that the August 24, 1999 judgment of acquittal is not void. The rules of appellate procedure do not apply to county criminal courts, even when that court exercises limited appellate jurisdiction pursuant to code of criminal procedure article 44.17. Tex.Code Crim. Proc. Ann. art. 44.17; *Carson*, 13 S.W.3d at 812–13; *Tweedie v. State*, 10 S.W.3d 346, 348 (Tex.App.—Dallas 1998, no pet.; *Tex. Dep't of Pub. Safety v. Fecci*, 989 S.W.2d 135, 138 (Tex.App.—San Antonio 1999, pet. denied). However, the rules of appellate procedure governing the timelines for perfecting an appeal to this court do apply to an appeal following a county criminal court's decision under article 44.17. *Fecci*, 989 S.W.2d at 138. In other words, the rules of appellate procedure governing, for example, the filing of a docketing statement, the time permitted for oral argument, or the filing of a motion for rehearing, clearly do not apply to a county criminal court exercising its limited article

44.17 appellate jurisdiction. *See* Tex. R.App. P. 32, 39, 49. However, an appellant desiring to perfect an appeal to this court from a county criminal court's decision in an article 44.17 appeal must comply, like any other appellant, with the rules of appellate procedure necessary to properly trigger this court's jurisdiction.

■ A criminal defendant faced with an unfavorable judgment may seek to have that judgment set aside by filing a motion for a new trial. Tex.R.App. P. 21. A motion for new trial may be filed by a criminal defendant simply for the purpose of extending the appellate timetable. *Accord* Tex.R.App. P. 26.2(a)(2) (providing that criminal defendant's notice of appeal is not due until ninety days after judgment is signed or sentence imposed if defendant timely files a motion for new trial); *Old Republic Ins. Co. v. Scott*, 846 S.W.2d 832, 833 (Tex.1993) (holding in civil cases motion for new trial may be filed solely to extend appellate timetable). After a motion for new trial is filed, the trial court has seventy-five days to make a ruling. Tex.R.App. P. 21.8(a). During this period of plenary power, the trial court may grant a new trial or rescind an order granting a new trial. *See Awadelkariem v. State*, 974 S.W.2d 721, 728 (Tex.Crim.App.1998). Thus, if Carson timely filed a motion requesting a new trial, County Criminal Court Number Five possessed jurisdiction for seventy-five days after July 20, 1999, to grant a new trial and, thereafter, render a new judgment.

■ Here, the record does not contain the document that was filed with the county criminal court and heard on August 13, 1999. Although the judgment of acquittal states that the "Motion for Rehearing on the appeal of Appellant" came on to be heard, the substance of that motion and the relief it sought are not apparent.

Thus, it is possible that the motion sought a new trial directly or alternatively and served to trigger the trial court's seventy-five-day plenary power. *See Llano v. State,* 16 S.W.3d 197, 198 (Tex.App.—Houston [1st Dist.] 2000, pet. ref'd) (holding pro se document filed in trial court titled "notice of appeal" but seeking a hearing on assertions that plea was involuntary should be construed as a motion for new trial); *see also Fecci,* 989 S.W.2d at 138 (analyzing procedural effect of a document entitled "Motion for New Trial/Motion for Rehearing"). The missing portion of the record could conceivably show that the claimed jurisdictional defect does not exist. Because the record before us fails to "leave no question about the existence of the fundamental defect," the judgment of acquittal is not void. *Nix,* 65 S.W.3d at 668.

■ Arlington argues that we should apply the same rules to Carson's "Motion for Rehearing" of the county criminal court's original judgment that we applied to the State's motion for rehearing from the judgment of acquittal. *See Carson,* 13 S.W.3d at 812–13. Different rules and timelines apply, however, to the State and to Carson. In the prior State's appeal, we held that article 44.01(d) of the code of criminal procedure required the State to perfect its appeal from the judgment of acquittal within fifteen days after that judgment was signed. *Id.; see also* Tex. R.App. P. 26.2(b). We noted that the State is not permitted to extend its fifteen-day deadline for perfecting an appeal by filing a motion for new trial or a motion for rehearing. *Carson,* 13 S.W.3d at 812. Because the State did not perfect its appeal within fifteen days of the entry of the judgment of acquittal, we dismissed its appeal for want of jurisdiction. *Id.* at 813; *see also* Tex.R.App. P. 26.2(b).

Carson, however, was not required to perfect an appeal within fifteen days from entry of the initial county criminal court's judgment affirming his conviction. He was entitled to extend the time for perfection of his appeal by filing a motion for new trial. *See* Tex.R.App. P. 26.2(a)(2). Therefore, contrary to Arlington's position, Carson's "Motion for Rehearing" conceivably could trigger the trial court's seventy-five-day plenary period and this court's extended appellate timetable while the State's "Motion for Rehearing" could not. *See* Tex.Code Crim. Proc. Ann. art. 44.01(d). We therefore are statutorily precluded from applying the same rules to Arlington and to Carson.

We cannot declare void the August 24, 1999 judgment acquitting Carson. We overrule Arlington's first cross-point.

## IV. Arrest Requirement

The primary issue in this appeal is whether Carson is entitled to expunction despite the fact that he was never physically detained by police. Arlington and Burleson argue that because Carson was never taken into custody or detained, he was never arrested and an expunction is not available to him. *See* Tex.Code Crim. Proc. Ann. art. 55.01. Carson, on the other hand, claims that he was effectively arrested when Arlington issued a citation to him by mail.

■ The code of criminal procedure, article 55.01(a)(1), provides that a person *who has been arrested* for commission of a misdemeanor is entitled to have all records and files relating to the arrest expunged if the person is tried for the offense for which the person was arrested and is acquitted. *Id.* An arrest is a threshold requirement under the expunction statute. *Quertermous v. State,* 52 S.W.3d 862, 864 (Tex.App.—Fort Worth 2001, no pet.) The question is whether the "arrest" re-

quired by article 55.01 is a physical, custodial detention, or something less. Because the Texas Code of Criminal Procedure, chapter 55, provides no definition of "arrest," it is our duty to construe the meaning of the term "arrest" to give effect to the legislature's intentions. *See Wilburn v. State,* 824 S.W.2d 755, 759 (Tex.App.—Austin 1992, no writ) (construing the term "debt" as used in a particular statute).

■ When construing a statute, a court may consider the object sought to be attained by the statute; the circumstances under which the statute was enacted; legislative history; common law or former statutory provisions; consequences of a particular construction; administrative construction of the statute; and the title (caption), preamble, and emergency provisions. TEX. GOV'T CODE ANN. § 311.023 (Vernon 1998); *Harris County Dist. Attorney's Office v. J.T.S.,* 807 S.W.2d 572, 573–74 (Tex.1991); *Chaouachi v. State,* 870 S.W.2d 88, 93 (Tex.App.—San Antonio 1993, no pet.). These factors may be considered regardless of whether a statute appears ambiguous on its face. *Chaouachi,* 870 S.W.2d at 93.

■ We consider these factors as they apply to article 55.01. Here, the object sought to be attained by the enactment of the expunction statute was to give a fresh start to individuals wrongly charged with an offense. *Ex parte E.E.H.,* 869 S.W.2d 496, 498 (Tex.App.—Houston [1st Dist.] 1993, pet. denied); *State v. Arellano,* 801 S.W.2d 128, 132 (Tex.App.—San Antonio 1990, no writ). The San Antonio Court in *Arellano* provided an extensive recitation of the legislative history of the expunction statute. *Id.* That court ultimately concluded, "The legislative history of Article 55.01 makes it abundantly clear that the legislative intent in passing the statute was to cure the evils attendant to

wrongful arrests and subsequent indictments." *Id.* No common law right to expunction existed. *Quertermous,* 52 S.W.3d at 864; *Ex parte Myers,* 24 S.W.3d 477, 480 (Tex.App.—Texarkana 2000, no pet.). Thus, the expunction statute is remedial in nature and should be given the most comprehensive construction possible. *Arellano,* 801 S.W.2d at 130.

Moving to the consequences-of-a-particular-construction factor, we note that in the case of Class C misdemeanors, whether an accused is placed under custodial arrest or is simply issued citation is purely discretionary:

> A peace officer who is charging a person, including a child, with committing an offense that is a Class C misdemeanor, other than an offense under Section 49.02, Penal Code, may, instead of taking the person before a magistrate, issue a citation to the person that contains written notice of the time and place the person must appear before a magistrate, the name and address of the person charged, and the offense charged.

TEX.CODE CRIM. PROC. ANN. art. 14.06(b). Thus, a defendant charged with a Class C misdemeanor by a citation issued through the mail may be charged and tried without ever being placed in a custodial arrest. To construe article 55.01 as requiring a custodial arrest as a prerequisite to an expunction would effectively eliminate from expunction eligibility persons acquitted or pardoned of Class C misdemeanor offenses when the citation is served on them by mail. A construction of article 55.01 that eliminates from expunction eligibility persons acquitted or pardoned of charged-by-mail Class C misdemeanors but preserves the expunction eligibility of persons acquitted or pardoned of more serious misdemeanor or felony offenses is not logical and runs contrary to the legislative intent underlying the expunction statute.

Rationally, as pointed out by Carson in oral argument before this court, a wrongful charge is most likely to occur when, as here, police are not involved in responding to the alleged offense but instead a citation is mailed out by a prosecutor based solely on an alleged witness's complaint. One legislator argued in support of the passage of the expunction statute:

> If you've been arrested and you've got an arrest record, and no circumstances exist, there is no reason at all in a just society why you should be penalized for the rest of your life for the existence of that record.

*Arellano,* 801 S.W.2d at 131 (quoting testimony given during the Senate Jurisprudence Committee's April 5, 1997 hearing of the bill). Thus, construing the statute to make expunction unavailable to any defendant served with a Class C misdemeanor citation by mail would "penalize" the defendant "for the rest of his life for the existence of that record" in direct contravention of expressed legislative intent. *Id.* (setting forth legislative history of expunction statute).

Moreover, the construction urged by Arlington and Burleson, that a custodial arrest is a necessary expunction prerequisite, would effectively give the State a measure of authority not contemplated by article 55.01. That is, theoretically, an officer or, as in this case a prosecutor, could chose to have a Class C misdemeanor citation mailed to a defendant on questionable or even outright false charges in order to orchestrate an unexpungeable record. Clearly, this would circumvent the purpose of the expunction statute: to provide a fresh start to individuals wrongfully charged.

We next examine Carson's proposed construction of article 55.01. Carson asserts that the mailing of a citation constitutes an arrest for purposes of article 55.01. He argues that certain provisions of the transportation code demonstrate that the issuance of a citation is always accompanied by an arrest. One such provision provides:

> An officer *who arrests a person* for a violation of this subtitle punishable as a misdemeanor *and who does not take the person before a magistrate shall issue a written notice to appear in court* showing the time and place the person is to appear, the offense charged, the name and address of the person charged, and, if applicable, the license number of the person's vehicle.

Tex. Transp. Code Ann. § 543.003 (Vernon Supp.2002) (emphasis added); *see also* Tex. Transp. Code Ann. § 543.005. These provisions would support Carson's position if he had been cited under the transportation code. However, simple assault is a penal code offense, and no corollary provision to transportation code section 543.003 exists in the penal code. Thus, we decline to superimpose transportation code provisions on penal code offenses.

Carson also urges us to hold that he substantially complied with article 55.01. He asserts that he should not be deprived of an expunction following an acquittal based on a factor out of his control: the prosecutor's election to mail the citation to him. Carson cites several situations where appellate courts allow substantial compliance to substitute for perfect performance. *See, e.g., Morales v. State,* 872 S.W.2d 753, 754 (Tex.Crim.App.1994) (holding substantial compliance with article 26.13 admonishments is acceptable), *overruled on other grounds by Cain v. State,* 947 S.W.2d 262, 264 (Tex.Crim.App. 1997); *Tidrow v. State,* 916 S.W.2d 623, 631 (Tex.App.—Fort Worth, 1996, no pet.) (holding substantial compliance with rules of appellate procedure satisfactory). The law is well settled, however, that because

expunction is a statutorily created remedy, strict compliance with the statute is required. *Ex parte Myers,* 24 S.W.3d at 480; *Harris County Dist. Attorney's Office v. Burns,* 825 S.W.2d 198, 200 (Tex. App.—Houston [14th Dist.] 1992, writ denied). We therefore decline to hold that substantial compliance with article 55.01's expunction requirements will suffice.

Carson next argues that the issuance of the citation constituted an "arrest" for purposes of article 55.01 because his freedom of movement was restrained by his fear of being arrested if he failed to appear at the time and place specified in the citation. The court of criminal appeals recently, in *Medford v. State,* construed the term "arrest" as used in penal code section 38.06, another statute that requires proof of "arrest" without defining that term, as requiring less than a custodial detention. 13 S.W.3d 769, 772 (Tex.Crim.App.2000); *see also* TEX. PENAL CODE ANN. § 38.06 (Vernon Supp.2002) (prohibiting escapes from custody when under arrest for another offense). In *Medford,* the court looked to article 15.22 of the code of criminal procedure which provides: "A person is arrested when he has been actually *placed under restraint* or taken into custody by an officer or person executing a warrant of arrest, or by an officer or person arresting without a warrant." TEX.CODE CRIM. PROC. ANN. art. 15.22 (Vernon 1977) (emphasis added); *Medford,* 13 S.W.3d at 772.

The *Medford* court held:

Additionally, "it is not the actual, physical taking into custody that will constitute an arrest. An arrest is complete whenever a person's liberty of movement is restricted or restrained." *Hardinge v. State,* 500 S.W.2d 870, 873 (Tex. Crim.App.1973). *See also Amores v. State,* 816 S.W.2d 407, 411 (Tex.Crim. App.1991). This is not to say the restriction or restraint of a suspect can be

achieved by only "actual, physical contact." *Woods v. State,* 466 S.W.2d 741, 743 (Tex.Crim.App.1971). *Texas has long embraced the axiom that, aside from the assertion of physical dominion over a suspect, it is also possible an arrest can be accomplished once a suspect has submitted to the officer's authority.* See *Wyatt v. State,* 120 Tex. Crim. 3, 47 S.W.2d 827, 829 (1932) (the officer did not at any time have the suspect in custody or under his control nor did the suspect at any time submit to an arrest); *Shannon v. Jones,* 76 Tex. 141, 13 S.W. 477, (1890) (actual contact is not necessary to constitute an arrest).

13 S.W.3d at 773 (emphasis added). The court of criminal appeals also noted in *Medford* that the United States Supreme Court has likewise held an arrest requires *either* physical force, however brief, *or* where that is absent, *submission* to the assertion of authority. *Id.* (citing *California v. Hodari D.,* 499 U.S. 621, 628, 111 S.Ct. 1547, 1551, 113 L.Ed.2d 690 (1991)).

■ Based on the foregoing case law, we cannot agree with Carson's contention that, when a Class C misdemeanor citation has been issued by mail, the fear of subsequent arrest for failure to appear as instructed in the citation constitutes a restriction of freedom equal to an "arrest" for purposes of article 55.01. The mailing of the citation and the receipt of the citation involve neither physical force nor submission to the assertion of authority. *See Medford,* 13 S.W.3d at 773. Thus we cannot hold that the mailing or receipt of a Class C misdemeanor citation constitutes an arrest.

■ Application of the above case law and the statutory construction factors we previously reviewed, however, supports the conclusion that Carson's *actual submission to an assertion of authority* by appearing at the time and place indicated on

the citation to dispute the charges against him was a restraint on his liberty constituting an arrest. *See Medford,* 13 S.W.3d at 772; *Wyatt,* 120 Tex.Crim. at 6, 47 S.W.2d at 829; *Shannon,* 76 Tex. at 148, 13 S.W. at 479. Under similar facts, in *Harris County Dist. Attorney's Office v. Burns,* the court held that the appellant was arrested for purposes of article 55.01 when, after learning a warrant had issued for his arrest, he surrendered to the bailiff of a district court and was kept waiting for an hour to see the judge. 825 S.W.2d at 202.

■ Construing a defendant's appearance in court as instructed in a Class C misdemeanor citation mailed to him to contest the charges against him as a "submission to an assertion of authority" sufficient to constitute an "arrest" for purposes of article 55.01 is consistent with the legislative intent underlying the expunction statute: that persons like Carson who are acquitted of charges brought against them are able to erase records of the charges and obtain a "fresh start." *See Arellano,* 801 S.W.2d at 131–32. This construction of the term "arrest" is consistent with our mandate to broadly construe the expunction statute because it is a remedial statute. *Id.* at 132. This construction of the term "arrest" is likewise harmonious with article 15.22's definition of an arrest as constituting any type of "restraint." *See* TEX.CODE CRIM. PROC. ANN. art. 15.22. Finally, this construction of the term "arrest" avoids giving article 55.01 a construction that would exempt from expunction eligibility persons acquitted of charged-by-mail Class C misdemeanor offenses. For all of these reasons, we hold that "arrest" as used in article 55.01 includes the submission to the assertion of authority demonstrated by a defendant's appearance in court at the time and place set forth in a

Class C misdemeanor citation mailed to him.

In support of its position that an "arrest" must be an actual, physical, custodial detention, Arlington relies upon *Harris County Dist. Attorney v. Lacafta,* 965 S.W.2d 568, 569 (Tex.App.—Houston [14th Dist.] 1997, no writ). In *Lacafta,* Ms. Lacafta's temporary driver's license was stolen. *Id.* The defendant used Lacafta's license to obtain a false identification card and then used that card to obtain a job dancing topless at a nightclub. *Id.* The defendant, posing as Lacafta, was arrested at the nightclub and was charged with public lewdness. *Id.* The defendant pleaded guilty and was placed on probation, all under Lacafta's name. *Id.* When the defendant failed to comply with the terms of her probation, Lacafta was required to appear at all of the defendant's hearings and prove she was not the defendant in question. *Id.* Lacafta then filed a petition for expunction, seeking to have her name expunged from the records in the defendant's case. *Id.* The trial court granted the expunction and the State appealed, arguing that Lacafta had not been "arrested" as required by article 55.01 and that article 55.01 did not provide for expunction of an alias name from another person's criminal record. *Id.*

The *Lacafta* court did not engage in a statutory construction analysis of the term "arrest" as used in article 55.01. Additionally, it alternatively held that "nothing in article 55.01 authorizes a court to grant partial expunction of information from another criminal defendant's files." *Id.* at 570. Based on *Lacafta*'s lack of statutory construction analysis and on the fact that this case does not involve a partial expunction of information contained in the files of a criminal defendant other than Carson, we decline to follow *Lacafta.*

We hold that because the record before us demonstrates that Carson submitted to Arlington's assertion of authority by appearing at the time and place indicated in the citation, Carson presented evidence establishing that he was "arrested" as required to strictly comply with article 55.01. The trial court therefore erred in determining that Carson was not "arrested" and in denying his petition for expunction. We sustain Carson's sole point.

## V. Burden of Proof

■■■■■ Burleson and Arlington both argue that Carson failed to meet his burden of establishing the statutory expunction requisites under article 55.01. The only elements Carson was required to prove to establish his entitlement to expunction under article 55.01(a)(1) are that he was: arrested for commission of a misdemeanor; was tried for the offense; and was acquitted. *See* TEX.CODE CRIM. PROC. ANN. art. 55.01. Carson offered into evidence at the expunction hearing copies of the municipal court papers and a copy of his judgment of acquittal. This evidence established that Carson was "arrested," as that term is used in article 55.01 for the offense of assault by offensive and provocative physical contact, that he was tried for this offense, and that a judgment of acquittal was entered. We therefore overrule Burleson's and Arlington's cross-point alleging that Carson did not meet his burden of establishing all the requisite statutory expunction elements.

## VI. Burleson's Records

In its third cross-point, Burleson argues that any files it retains regarding Carson's arrest are held in its capacity as Carson's former employer and not in its capacity as a state agency. Burleson therefore asserts that its records should not be made a part of any expunction order that may be entered.

Article 55.02, section 2(b) sets forth the matters to be included in a petition for expunction. *Id.* art. 55.02, § 2(b). The petition must list "all law enforcement agencies, jails or other detention facilities, . . . and other officials or agencies or other entities of this state . . . that the petitioner has reason to believe have records or files that are subject to expunction." *Id.* Carson's petition for expunction lists Burleson as one of the agencies he believes possesses records or files subject to expunction.

■■■ Expunction is a civil proceeding, not a criminal proceeding. *In re Wilson*, 932 S.W.2d 263, 266 (Tex.App.—El Paso 1996, no writ). Thus, the rules of civil procedure apply to expunction hearings. *See, e.g., Tex. Dep't Pub. Safety v. Mendoza*, 952 S.W.2d 560, 562 (Tex.App.—San Antonio 1997, no pet.) (applying rule of civil procedure 92).

■■■ Burleson did not file a verified pleading as required by civil procedure rule 93 asserting that it was not liable in the capacity in which it was sued. TEX.R. CIV. P. 93. Accordingly, Burleson cannot complain on appeal that it was improperly included in Carson's expunction petition because it was only Carson's employer. *See, e.g., Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex.1996) (recognizing that rule 93(1) requires party challenging capacity to file a verified pleading and holding that parties not following rule 93's mandate waive any right to complain about the matter on appeal). Thus, we decline in this appeal to globally exempt all records or files held by Burleson from the trial court's expunction order based on Burleson's capacity argument. We overrule Burleson's third cross-point.

However, our capacity ruling does not preclude Burleson from offering evidence on remand that at least some of the records and files it possesses are not subject to expunction. Article 55.01(a) authorizes expunction of "all records and files relating to the arrest." TEX.CODE CRIM. PROC. ANN. art. 55.01(a). The obvious objective of the expunction statute is to remove from public access and from access by the officials and agencies named in the order all evidence of a petitioner's arrest and the charges made against him. *W.V. v. State*, 669 S.W.2d 376, 378 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). This evidence consists generally of the indictment and the photographs, fingerprints, and other matters comprising the arrest record and records relating to the expunction proceeding. *Id.* To the extent Burleson possesses records other than these types of records, they are not subject to expunction. *See id.* Our refusal to exempt Burleson in toto from the expunction proceedings on capacity grounds does not deprive Burleson of its ability, like any other agency or entity listed in Carson's petition, to contest expunction of records and files that are unrelated to the arrest.

## VII. CONCLUSION

We reverse the trial court's denial of Carson's petition for expunction and remand for further proceedings consistent with this opinion and for the entry of an appropriate expunction order.